André E. Jardini, Bar No. 71335
aej@kpclegal.com
Gwen Freeman, Bar No. 104094
gf@kpclegal.com
K.L. Myles, Bar No. 243272
klm@kpclegal.com
KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5000
Facsimile: (818) 547-5329

Attorneys for Plaintiff
AMBER ECHAVEZ, individually, and on behalf of
a class of similarly situated individuals

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER ECHAVEZ, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> ABERCROMBIE & FITCH CO., INC.; ABERCROMBIE & FITCH STORES, INC.; ABERCROMBIE & FITCH TRADING CO.; and DOES 1-100, inclusive, <br><br> Defendants. | NO.   CV11-09754 GAF (PJWx) <br><br> Assigned for All Purposes to The Honorable Virgina A. Phillips <br><br> Date:               March 27, 2017 <br> Time:                      2:00 p.m. <br> Ctrm:                            8A <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION OF PLAINTIFF FOR APPROVAL OF SETTLEMENT <br><br> [Filed concurrently with Joint Notice of Motion for Approval of Settlement; Declarations of Andre E. Jardini and Robert Starr; [Proposed] Order] |

KNAPP,
PETERSEN
& CLARKE

2753148.1  08000/00942

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 2

III.    PROCEDURAL HISTORY ....................................................................... 3

IV.     THERE WAS UNCERTAINTY FOR BOTH PARTIES AS TO
        A LIKELY ULTIMATE JUDGMENT AND THE
        NEGOTIATIONS WERE IN GOOD FAITH AND AT ARM'S
        LENGTH ................................................................................................... 6

V.      TERMS OF THE AGREEMENT ............................................................. 7

VI.     STANDARD OF REVIEW ....................................................................... 8

        A.      The Strengths and Weaknesses Of Plaintiff's Claims ................. 13

        B.      The Expense, Complexity and Likely Duration Of Further
                Litigation .................................................................................... 13

        C.      The Amount Offered In Settlement ............................................. 14

        D.      The Presence Of A Government Participant ................................ 18

        E.      The Extent of Investigation and Discovery Completed ............... 18

        F.      PAGA Counsel Are Experienced and Litigated Vigorously ....... 19

VII.    CONCLUSION ....................................................................................... 19

KNAPP,
PETERSEN
& CLARKE

-i-

2753148.1   08000/00942

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ............................................................ 11

*Amaral v. Cintas Corp. No. 2,*
   163 Cal. App. 4th 1157 (2008) ............................................................ 17

*Adoma v. Univ. of Phoenix, Inc.*
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................. 17

*Ambrosino v. Home Depot U.S.A., Inc.,*
   2014 WL 3924609 (S.D. Cal. Aug. 11, 2014) ..................................... 11

*Arias v. Superior Court,*
   46 Cal. 4th 969 (2009) ........................................................................... 9

*Brown v. Ralph's Grocery Co.,*
   197 Cal.App.4th 489 (2011) ................................................................... 2

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ............................................................... 11

*Clark v. American Residential Services LLC*
   (2009) 175 Cal. App. 4th 785 ............................................................... 12

*Cunningham v. Leslie's Poolmark, Inc.*
   CV13-2122 CAS (CWx) (Not reported in Fed. Supp.) .............. 15, 16, 17

*Cotter v. Lyft, Inc.,*
   176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) ........................................ 13

*Dunk v. Ford Motor Co.,*
   48 Cal. App. 4th 1794 (1996) ........................................................ 11, 13

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.,*
   2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ....................................... 11

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................. 10, 11, 12

1

## TABLE OF AUTHORITIES (cont.)

2

**Page(s)**

3
4
*In re Microsoft I-V Cases,*
    135 Cal. App. 4th 703 (2006)..................................................................... 11

5
6
*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985)............................................................. 18

7
8
*Kilby v. CVS Pharmacy, Inc.,*
    939 F.3d 1192 (2013) ............................................................... 5, 6, 7, 13

9
*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012)..................................................................... 12

10
11
*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor,*
    679 F.2d 1350 (11th Cir. 1982)................................................................. 11

12
13
14
*Millan v. Cascade Water Servs., Inc.,*
    No. 1:12-CV-1821-AWI-EPG, 2016 WL 3077710 (E.D. Cal. Jun. 2,
    2016)........................................................................................................ 12

15
16
*O'Connor v Uber Technologies,*
    2016 WL 4398271 (N.D. Cal. Aug 18, 2016)............................... 10, 10fn.

17
*Osumi v. Sutton,*
    151 Cal. App. 4th 1355 (2007)................................................................. 12

18
19
*Otey v. Crowdflower, Inc.,*
    No. 12-CV-05524-JST, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014)............... 12

20
21
*Reyes v. Macy's, Inc.,*
    202 Cal. App. 4th 1119 (2011)................................................................... 2

22
23
*Selk v. Pioneers Mem. Healthcare Dist.,*
    159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)........................................... 12

24
25
*Wershba v. Apple Computer, Inc.*
    91 Cal. App. 4th 224 (2001)..................................................................... 12

26
27
28

-iii-

## **TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**STATUTES**

Cal. Lab. Code
   § 1198 ...................................................................................................... 2
   § 2698, et seq. ........................................................................................ 2
   § 2699(a) ................................................................................................ 15
   § 2699(c) ............................................................................................ 2fn.
   § 2699(e)(2) ...................................................................................... 2, 14
   § 2699(f) .................................................................................................. 7
   § 2699(g)(1) .......................................................................................... 18
   § 2699(i) ............................................................................................ 8, 16
   § 2699.3(b)(4) ....................................................................... 1, 11, 14, 18

Private Attorneys General Act of 2004 (PAGA) .................................. *passim*

28 U.S.C.
   § 201 et seq. .......................................................................................... 11
   § 1332 ...................................................................................................... 4
   § 1441 ...................................................................................................... 4
   § 1446 ...................................................................................................... 4
   § 1453 ...................................................................................................... 4

**MISCELLANEOUS**

*Businesses Beware: Chapter 906 Deputizes 17 Million Private*
   *Attorneys General to Enforce the Labor Code*
   35 McGeorge L. Rev. 581, 584 (2004) .............................................. 15

Fed. R. Civ. P.
   Rule 23 ........................................................................................... 10, 12
   Rule 23(e) .............................................................................................. 12
   Rule 30(b)(6) .......................................................................................... 4

Newberg & Conte, Newberg on Class Actions, (2d.Ed. 1987)
   § 11.41, p. 11-91 .................................................................................. 11

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

IWC

    Wage Order 7-2001 ................................................................................. 2, 6

    Wage Order 7-2001, Section 14 .......................................................... 1, 4

    Wage Order 7-2001, Section 14, subsections(A) ................................ 2, 3, 4, 5, 6

    Wage Order 7-2001, Section 14, subsections(B) ................................ 2, 3, 5, 6

2753148.1  08000/00942

# I.

# INTRODUCTION

The Parties herein, Plaintiff Amber Echavez ("Echavez") and Defendants Abercrombie & Fitch Stores, Inc.; Abercrombie & Fitch Co., and Abercrombie & Fitch Trading Co. (collectively hereinafter "A & F"), hereby jointly move this Court for approval of settlement in this action in the amount of $700,000 ($340,000 as penalties; 75% of which is to be paid to the State of California Labor and Workforce Development Agency ("LWDA") and $360,000 as attorneys' fees and costs) and an agreement on the part of A & F with regard to suitable seating, more fully set forth in the Joint Stipulation for Settlement of Representative Action Under Labor Code Private Attorneys General Act, attached hereto as Exhibit 1.

This motion is brought pursuant to Labor Code § 2699.3(b)(4) which provides that:

> The superior court shall review and approve any proposed settlement of alleged violations of Division 5 (commencing with Section 6300) to ensure that the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation. The provisions of the settlement relating to health and safety laws shall be submitted to the division at the same time that they are submitted to the court. This requirement shall be construed to authorize and permit the division to comment on the settlement provisions, and the court shall grant the division's commentary appropriate weight."

Here, the district court assumed jurisdiction from the superior court when the action was removed. This settlement is a settlement of an alleged violation of IWC

KNAPP,
PETERSEN
& CLARKE

-1-

1   Wage Order No. 7 – 2001, Section 14, regarding suitable seating.  This motion will

2   be concurrently served on the LWDA.  Labor Code § 2699(e)(2).

3        For all the reasons outlined below, the Parties request that the Court enter an

4   order approving the settlement.

5                                  **II.**

6                          **STATEMENT OF FACTS**

7        This case is a "suitable seating" case under the appealable California Wage

8   Order. On October 2011, Echavez, filed this representative action against

9   Abercrombie & Fitch for recovery of penalties pursuant to the California Labor Code

10  Private Attorneys General Act of 2004, California Labor Code section 2698, et seq.

11  ("PAGA"). PAGA permits an "aggrieved employee"[1] to bring a representative action

12  on behalf of herself and other current and former employees to address an

13  employer's violations of the California Labor Code. Allowing a PAGA plaintiff to

14  bring a representative action touching upon the rights of a group of employees

15  promotes PAGA's legislative purpose of bringing about meaningful, vigorous private

16  enforcement of the California Labor Code, in this case Section 1198 and Wage Order

17  7-2001, section 14, subsections (A) and (B). *Reyes v. Macy's, Inc.,* 202 Cal. App. 4th

18  1119, 1123 (2011); *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 501-502

19  (2011).

20       Wage Order 7-2001, which covers businesses in the "mercantile industry,"

21  such as A & F, states: "(A) All working employees shall be provided with suitable

22  seats when the nature of the work reasonably permits the use of seats." (*Id.* § 14(a))

23  and "(B) When employees are not engaged in the active duties of their employment

24  and the nature of the work requires standing, an adequate number of suitable seats

25

---

26  [1] The PAGA defines an "aggrieved employee" as "any person who was employed by
    the alleged violator and against whom one or more of the alleged violations was
27  committed." Lab. Code § 2699(c).

1 | shall be placed in reasonable proximity to the work area and employees shall be

2 | permitted to use such seats when it does not interfere with the performance of their

3 | duties." (*Id.* § 14(b)).

4 |     It is alleged that A & F required its sales associates to stand to perform all

5 | tasks within that job category, even if, as Echavez claimed, some of those tasks could

6 | be performed while sitting. A & F argued that the customers' experience of the

7 | stores' aspirational image and "athletic vibe" would be diminished if the sales

8 | associates were permitted to sit. Therefore, it was A & F's policy that sales

9 | associates were not permitted to use seats on A & F's sales floor unless on an

10 | authorized meal or rest break.

11 |     In the course of briefing on A & F's motion for summary judgment, Echavez

12 | adduced evidence that the sales associates' job duties include working as a cashier,

13 | setting up displays of clothing before the store opens, folding and setting up displays

14 | of clothing after the store closes, remaining in a fixed location and folding clothes,

15 | remaining in a fixed zone when restocking merchandise, standardizing the store,

16 | processing shipment, replacing sensors on merchandise, cleaning tasks, and returning

17 | merchandise to its proper location. Echavez contended that the job duties of sales

18 | associates can be performed, in part, while seated. Echavez also contended that when

19 | sales associates are not otherwise engaged in the active duties of employment, seats

20 | can feasibly be made available to sales associates and can be located in the A & F

21 | stores in reasonable proximity to where the sales associates perform their job duties.

## III.

## PROCEDURAL HISTORY

24 |     On or about August 31, 2011, Echavez, through her counsel, sent a letter to the

25 | LWDA, advising of her intention to pursue claims against A & F pursuant to PAGA

26 | relating to alleged "suitable seating" violations.

27 |     On October 17, 2011, Echavez filed a complaint in the Los Angeles County

28 | Superior Court, seeking civil penalties pursuant to PAGA (the "Litigation").

**KNAPP, PETERSEN & CLARKE**

-3-

1    A & F removed the case to federal court on November 23, 2011, asserting

2    diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of

3    2005 (28 U.S.C. § 1332, 1441, 1446 and 1453.)

4    The first amended complaint, the operative pleading, was filed January 23,

5    2012.  Echavez alleged that A & F is subject to requirements of Wage Order 7-2001,

6    section 14, and that the job of a retail sales employee at A & F reasonably permits

7    the use of a seat when the retail sales employee is not engaged in the active duties of

8    his or her employment.  The complaint alleges only PAGA violations.  The

9    complaint is not a class action.

10    On March 26, 2012, A & F filed an answer denying the allegations of the

11    FAC.

12    The Parties engaged in significant formal and informal discovery, including

13    written discovery, the deposition of Echavez, the deposition of A & F's

14    Fed. R. Civ. P. 30(b)(6) witness, and exchanges of extensive documents and

15    information, as more fully detailed in the Declaration of André E. Jardini, ("Jardini

16    Decl.") ¶ 7.

17    On or about June 11, 2013, A & F moved for summary judgment. Echavez

18    opposed.

19    On August 13, 2013, this court granted summary judgment in favor of A & F,

20    in part, as to Wage Order 7-2001 subsection (A) which provides that: "All working

21    employees shall be provided with suitable seats when the nature of the work

22    reasonably permits the use of seats." This court found that in determining whether

23    the nature of the employee's job requires standing, within the meaning of subsection

24    (A), the court should look at the job as a whole and if the majority of the tasks

25    require standing, then the nature of the work requires standing, even if certain tasks

26    could be accomplished while seated. (Order Re: Motion for Summary Judgment &

27    Motion to Strike, pgs. 8-9, Dkt No. 77).

28    ///

KNAPP,
PETERSEN
& CLARKE

-4-

2753148.1  08000/00942

1   This court found that subsection (A) was mutually exclusive from subsection
2   (B) which provides that: "When employees are not engaged in the active duties of
3   their employment and the nature of the work requires standing, an adequate number
4   of suitable seats shall be placed in reasonable proximity to the work area and
5   employees shall be permitted to use such seats when it does not interfere with the
6   performance of their duties." Whether a job was categorized as a "sitting job" or
7   "standing job" depended upon whether the majority of tasks performed by the
8   employee during the day could be accomplished while sitting or necessitated
9   standing. Since the evidence in this case established that up to 40% of the tasks in the
10  relevant job category could be performed while seated, this court found that the job
11  category at issue was a "standing" job.

12      This court initially denied the motion as to subsection (B).  The court agreed
13  with A & F that seats only need be provided during breaks but found the evidence
14  insufficient to determine whether the seats provided were suitable.

15      On September 12, 2012, the Parties filed a Joint Motion for Reconsideration to
16  clarify that the dispute regarding subsection (B) was not on the facts but on the
17  interpretation of the Wage Order.  Echavez did not dispute that seats were available
18  for use when employees were on breaks but argued, as a matter of interpretation, that
19  subsection (B) requires seats be made available to employees during their shifts on
20  the occasions when they were not otherwise engaged in the active duties of their
21  employment.

22      On September 24, 2013, this court again found that subsection (B) only
23  required seats be made available to employees on breaks and granted A & F's motion
24  for summary judgment in its entirety. This court thus entered final judgment in favor
25  of A & F.

26      On October 23, 2013, Echavez filed a notice of appeal from this judgment.
27      On December 31, 2013, in the case of *Kilby v. CVS Pharmacy, Inc.*, 939 F.3d
28  1192 (2013) (hereinafter "*Kilby*"), the Ninth Circuit certified to the California

KNAPP,
PETERSEN
& CLARKE

-5-

2753148.1   08000/00942

1    Supreme Court the identical questions concerning the interpretation Wage order 7-

2    2001, as were at issue in this case, namely whether the "nature of the work" phrase in

3    subsection (A) should be read in reference to the majority of tasks comprising a job,

4    or whether each task should be viewed separately; and whether subsections (A) and

5    (B) are mutually exclusive. (A copy of the 9th Circuit *Kilby* decision is attached as

6    Exhibit 2.)

7         On January 27, 2014, Echavez and A & F jointly moved the Ninth Circuit to

8    stay all proceedings in this case, pending the California Supreme Court's resolution

9    of the dispositive issues in *Kilby*. That motion was granted on January 29, 2014

10   (Order Re Stay Proceedings Pending Decision in *Kilby v. CVS Pharmacy, Inc.*, Dkt.

11   No. 94), and thereafter the stay was extended until April 4, 2016, when the California

12   Supreme filed its decision in *Kilby*, resolving the disputed issues of law in favor of

13   the employees, and triggering the lifting of the stay.  (A copy of the California

14   Supreme Court decision in *Kilby* is attached as Exhibit 3.)

15        Thereafter, the Parties engaged in settlement negotiations, which were

16   unsuccessful. Echavez filed her opening brief on September 14, 2016.

17        After the filing of the Opening Brief, the Parties agreed to continue to

18   negotiate toward settlement and participated in a full-day private mediation with the

19   Hon. Judge Dickran Tevrizian (Ret.) on November 9, 2016. At the end of that

20   mediation, a settlement was reached, with the assistance of the mediator, and the

21   Parties agreed on the principal settlement terms.

22                                    **IV.**

23   **THERE WAS UNCERTAINTY FOR BOTH PARTIES AS TO A LIKELY**

24   **ULTIMATE JUDGMENT AND THE NEGOTIATIONS WERE IN GOOD**

25                   **FAITH AND AT ARM'S LENGTH**

26        Although the legal issue had been decided in favor of Echavez, and both

27   Parties were desirous of settlement, this case posed difficult challenges in negotiation

28   because the amount of the likely penalties was not easily ascertainable. Given that

KNAPP,
PETERSEN
& CLARKE

-6-

1  *Kilby* was only recently decided, there was no body of verdicts or settlements to refer

2  to for comparison.

3      Labor Code § 2699 (f) provides that "…there is established a civil penalty for

4  a violation of these provisions [of the Labor Code] as follows: …¶ (2) If, at the time

5  of the alleged violation, the person employs one or more employees, the civil penalty

6  is one hundred dollars ($100) for each aggrieved employee per pay period for the

7  initial violation and two hundred dollars ($200) for each aggrieved employee per pay

8  period for each subsequent violation." The LWDA is entitled to 75% of the total

9  amount of penalties.

10      As set forth in the Jardini Decl. ¶ 26, the negotiations in this case began May

11  16, 2016, with a demand from counsel for Echavez, in light of *Kilby*. In discovery, A

12  & F stated that the total number of employees who were similarly situated from

13  October 17, 2010, to the time that the discovery was responded to, was 8,818.

14  Counsel for Echavez conservatively estimated 10,000 employees through the present.

15      An all-day mediation occurred on November 9, 2016, before Judge Tevrizian.

16  Negotiations continued until late in the afternoon, with Judge Tevrizian's active

17  assistance. Amber Echavez was present, as were representatives of A & F. The

18  amounts and conditions were argued by both sides, at arm's length, and ultimately

19  compromised. Due in large part to Judge Tevrizian's efforts, a settlement was finally

20  reached.

21  **V.**

22  **TERMS OF THE AGREEMENT**

23      The total payment under the Settlement Agreement is Seven Hundred

24  Thousand Dollars ($700,000.00) (the "Settlement Amount").[2] Of the Settlement

25  

26  [2] This summary description of the provisions of the Settlement Agreement are included herein for the purpose of discussion in support of this Motion. The within

27  does not modify the terms of the Settlement Agreement in any particular. Should there be any discrepancy between the within and the Settlement Agreement, the

28  (Continued...)

KNAPP,
PETERSEN
& CLARKE

-7-

1   Amount, three hundred forty thousand dollars ($340,000.00) will be paid as penalties

2   under PAGA (the "Penalties Amount"); and three hundred sixty thousand dollars

3   ($360,000.00) will be paid as plaintiff's counsel's attorneys' fees and costs. Pursuant

4   to statute, seventy-five percent (75%) of the penalties amount ($255,000.00) must be

5   paid to the LWDA. Lab. Code, § 2699(i).

6        The Parties further agreed, with court approval, that twenty-five percent (25%)

7   of the penalty amount ($85,000.00) be paid to Echavez as the PAGA representative,

8   without whom the case would not have been brought.

9        Although A & F made no admission, it represented that it had changed its

10   practices and did provide suitable seating in the stock room and the sales floor of

11   their Abercrombie & Fitch, Abercrombie and Hollister stores in California, and

12   would continue to do so for a period of two years after approval of the Settlement

13   Agreement by this court. Such seating will be provided to employees when the

14   nature of the work reasonably permits the use of seats.

15        A & F likewise agreed to provide suitable seating to employees in their

16   Abercrombie & Fitch, Abercrombie and Hollister stores in California when they are

17   not engaged in the active duties of their employment and when the nature of the work

18   requires standing, and when the use of seats does not interfere with the performance

19   of their duties. A & F agreed to inform employees in their Abercrombie & Fitch,

20   Abercrombie and Hollister stores in California of the availability of suitable seating.

21   **VI.**

22   **STANDARD OF REVIEW**

23        This case is solely a PAGA claim, not a class action, and the standard for

24   determining the reasonableness of a settlement has not been the subject of significant

25

26   (...Continued)

27   terms of the Settlement Agreement control and is the sole source of the meaning of
such terms.

28

KNAPP,
PETERSEN
& CLARKE

2753148.1   08000/00942

1    judicial discussion. In 2003, California enacted the Private Attorneys General Act of

2    2004. *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009). As explained by the

3    LWDA:

> By creating a cause of action under which private
> plaintiffs may recover civil penalties otherwise recoverable
> by the state, PAGA benefits the public by augmenting the
> state's enforcement capabilities, encouraging compliance
> with Labor Code provisions, and deterring noncompliance.
> This furthers the state's policy to protect workers from
> substandard and unlawful conditions and also to protect
> employers "who comply with the law from those who
> attempt to gain a competitive advantage at the expense of
> their workers by failing to comply with minimum labor
> standards."

15    LWDA Resp. at 2 (quoting Cal. Lab. Code § 90.5(a)); *see also Arias*, 46

16    Cal. 4th at 980, (explaining that in passing PAGA, "[t]he Legislature declared that

17    adequate financing of labor law enforcement was necessary to achieve maximum

18    compliance with state labor laws, that staffing levels for labor law enforcement

19    agencies had declined and were unlikely to keep pace with the future growth of the

20    labor market, and that it was therefore in the public interest to allow aggrieved

21    employees, acting as private attorney generals, to recover civil penalties for Labor

22    Code violations").

23    A plaintiff who brings a PAGA claim "does so as the proxy or agent of the

24    state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986. Because the

25    "plaintiff represents the same legal right and interest as state labor law enforcement

26    agencies," the California Supreme Court has found that "a judgment in an

27    employee's action under the act binds not only that employee but also the state labor

28    law enforcement agencies." *Id.*

KNAPP,
PETERSEN
& CLARKE

-9-

1    It is thus important that when a PAGA claim is settled, the relief provided for

2  under the PAGA be genuine and meaningful, consistent with the underlying purpose

3  of the statute to benefit the public. The court is asked to evaluate whether the

4  settlement meets the standards of being fundamentally fair, reasonable, and adequate

5  with reference to the public policies underlying the PAGA.

6  LWDA Resp. at 2-3.

7    In *O'Connor v. Uber Technologies,* No. 13-CV-03826-EMC, 2016 WL

8  4398271 (N.D. Cal. Aug. 18, 2016) the court was faced with a proposed class action

9  settlement which also included a claim under PAGA. The court separately discussed

10 the standard for approval under PAGA. The court recognized that cases discussing

11 the class action standard may be helpful and required the parties to demonstrate that

12 either the factors set forth in the class action case of *Hanlon v. Chrysler Corp.,* 150

13 F.3d 1011, 1026 (9th Cir. 1998) "or any other coherent analysis" justified the

14 proposed settlement of the PAGA claim.[3]

15   Therefore, although Rule 23 has no application to this case, it is not

16 inappropriate to consider the *Hanlon* factors: (1) the strength of the plaintiff's case;

17 (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

18 amount offered in settlement; (4) the extent of discovery completed and the stage of

19 the proceedings; (5) the experience and views of counsel; and (6) the presence of a

20 government participant.

21   The *Hanlon* court also mentioned, as a factor, the "reaction of the class

22 members to the proposed settlement." That factor has no analogous component here.

23 The interest served is that of the State of California and the LWDA is the

---

[3] The *O'Connor v. Uber* court did not approve the settlement, finding that the disparity between the amount proposed for the class compared to the amount of the settlement of the PAGA claims was disproportionate and not fair to the LWDA. That is not a concern here, as there is no class claim included. The penalties will be paid 75% to the LWDA by statute.

KNAPP,
PETERSEN
& CLARKE

28

-10-

2753148.1   08000/00942

1  governmental entity which has standing to comment upon any settlement. Labor

2  Code § 2699.3(b)(4). The *Hanlon* court also identified "the risk of maintaining class

3  action status throughout the trial" as a factor, but, again, that factor has no

4  application here. Otherwise, the six remaining factors provide a useful framework for

5  evaluating the settlement. *Hanlon*, 150 F.3d at 1026; see also *Allen v. Bedolla*, 787

6  F.3d 1218, 1222 (9th Cir. 2015) (same); *Churchill Vill., L.L.C. v. Gen. Elec.,* 361

7  F.3d 566, 575 (9th Cir. 2004) (same).

8      According to *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (1996), "a

9  presumption of fairness exists where: (1) the settlement is reached through arm's-

10 length bargaining; (2) investigation and discovery are sufficient to allow counsel and

11 the court to act intelligently; (3) counsel is experienced in similar litigation; and (4)

12 the percentage of objectors is small."[4] (*Id.* at 1801; *In re Microsoft I-V Cases, supra*,

13 135 Cal. App. 4th at p. 723; see also Newberg & Conte, Newberg on Class Actions,

14 (2d.Ed. 1987) § 11.41, p. 11-91.)

15     It would also be appropriate for this court to look to case law concerning

16 settlement of a claim brought under the Fair Labor Standards Act 28 U.S.C. 201

17 et seq. ("FLSA") which, likewise, requires court approval. Because the Ninth Circuit

18 has not established a standard for district courts to follow when evaluating an FLSA

19 settlement, California district courts have applied the standard established by the

20 Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of*

21 *Labor,* 679 F.2d 1350, 1352 (11th Cir. 1982). *See Dunn v. Teachers Ins. & Annuity*

22 *Ass'n of Am.,* 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) and *Ambrosino v.*

23 *Home Depot U.S.A., Inc.,* No. 11CV1319 L (MDD), 2014 WL 3924609, at *1 (S.D.

24 Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the

25

---

26 [4] PAGA provides no notice or claim procedures as exist in class action cases.
   Therefore, objections (other than potentially LWDA) are not contemplated in PAGA
27 actions.

KNAPP, PETERSEN & CLARKE

28

-11-

1  proposed settlement reflects 'a reasonable compromise over [disputed] issues.'")

2  (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). Although the standard for

3  approving FLSA collective actions may be different from the standard for approving

4  class actions under Federal Rule of Civil Procedure 23, courts have applied the

5  *Hanlon* factors to a settlement of an FLSA claim. *Millan v. Cascade Water Servs.,*

6  *Inc.,* No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. Jun. 2,

7  2016); *see also Otey v. CrowdFlower, Inc.,* No. 12-CV-05524-JST, 2014 WL

8  1477630, at *11 (N.D. Cal. Apr. 15, 2014). In *Selk v. Pioneers Mem'l Healthcare*

9  *Dist.,* 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) the court evaluated an FLSA

10  settlement using a totality of the circumstances approach "that replicates the factors

11  relevant to Rule 23 class actions where appropriate, but adjusts or departs from those

12  factors when necessary to account for the labor rights at issue."

13       While a court should not simply "rubber stamp" a proposed settlement with

14  little or no independent evaluation, the court "must stop short of the detailed and

15  thorough investigation that it would undertake if it were actually trying the case."

16  *Clark v. Am. Residential Servs. LLC,* 175 Cal. App. 4th 785, 799 (2009) . (Emphasis

17  added.)  The court should not expect that the parties offer concrete "proof" in support

18  of settlement, but rather that the parties have made a good faith effort to explain the

19  reasoning behind certain strategic decisions and the valuation of specific claims.

20  "[W]hether a settlement is fundamentally fair within the meaning of Rule 23(e) is

21  different from the question whether the settlement is perfect in the estimation of the

22  reviewing court." *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012). "It is, of

23  course, the strong public policy of this state to encourage the voluntary settlement of

24  litigation." (*Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1359 (2007).)

25       Finally, the various factors identified above are not exclusive and the court is

26  free to balance and weigh the factors depending on the circumstances of the case.

27  (*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 244–245 (2001).)

28  ///

**A.**  **The Strengths and Weaknesses Of Plaintiff's Claims**

"In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.,* 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted);

In the instant case, a thorough evaluation of Echavez' claims supports a finding that the settlement is fair, adequate and reasonable.  Here, while the legal issue was decided in favor of Echavez by the California Supreme Court, the ultimate decision as to the amount of penalties was always up to the discretion of this Court, who had not initially been persuaded of the merits of Echavez' position. In *Cotter*, the court found a significant reduction of the PAGA claim would be appropriate because "[t]his does not appear to be a case where a company has deliberately sought to evade the law.  *Cotter v. Lyft*, 176 F. Supp. 3d at 941.

A & F litigated the case aggressively, initially maintaining that their policies and practices fully comported with California law, and thereafter offering defenses that would require further factual development and possibly trial.

**B.**  **The Expense, Complexity and Likely Duration Of Further Litigation**

To assess the fairness, adequacy, and reasonableness of a class action settlement, the court also should consider the expense, complexity and likely duration of further litigation. *Dunk, supra*, 48 Cal. App. 4th at 1801. Here, the expense, complexity and likely duration of future litigation was to some extent an unknown, as what factors needed to be shown by proof to a trier of fact, post-*Kilby*, had not been tested.

As set forth above, factual disputes continued to exist regarding feasibility and business judgment, which could likely require expert testimony. A factual dispute also arose as to A & F's compliance with *Kilby*, the adequacy of the change in practice, and whether the award sought by Echavez was unjust, arbitrary or oppressive.

KNAPP,
PETERSEN
& CLARKE

-13-

1    The Parties faced the expense and uncertainty of a trial and regardless of

2    which Party prevailed, the likelihood of an appeal was significant.

3    **C.**     **The Amount Offered In Settlement**

4         1.     Agreement to Provide Suitable Seating

5    The significant benefit achieved for Echavez and other A & F similarly

6    situated employees is relief directly related to the purpose of the statute. A & F has

7    agreed to provide suitable seating. From an informal investigation conducted by

8    Echavez' counsel, Echavez agrees that A & F appears to have already complied with

9    respect to certain stores in Los Angeles and San Francisco.

10        2.     Payment of $340,000 in Penalties

11   Here, the amount to be paid by A & F is a significant penalty but it is not

12   confiscatory, nor is it, in the terms of the PAGA statute, "unjust, arbitrary, or

13   oppressive." Labor Code § 2699(e)(2).

14   Further per Labor Code § 2699.3(b)(4) the "provisions of the settlement

15   relating to health and safety laws shall be submitted to the division at the same time

16   that they are submitted to the court. This requirement shall be construed to authorize

17   and permit the division to comment on the settlement provisions, and the court shall

18   grant the division's commentary appropriate weight."

19   The LWDA will have an opportunity to comment upon the amount of

20   $255,000[5] to be paid to the LWDA. This provision protects against collusive

21   settlements for less than a reasonable value of the claim.

22        3.     Payment to Echavez

23   It is appropriate in this case that Plaintiff Amber Echavez be paid 25% of the

24   penalties, $85,000. A & F has agreed that this amount should be paid.  This is an

25   amount sufficient to motivate an employee to take on the onerous role of

26   _____

27   [5] In the experience of plaintiff's counsel, this amount is among the highest to be paid
     to LWDA in the history of PAGA.

KNAPP,
PETERSEN
& CLARKE      28

-14-

2753148.1  08000/00942

1   whistleblower and enforcer. To provide the monetary benefit to the representative,

2   who took the initiative and assumed the not insignificant burden and risk of litigation

3   is a fair result.

4          As explained in *Cunningham v. Leslie's Poolmart, Inc.,* CV13-2122 CAS

5   (CWx) (Not reported in Fed. Supp.) (attached as Exhibit 4) payment of 25% to the

6   representative is the result most consistent with the purpose of the PAGA statute. As

7   was recognized by the Hon. Judge Christian Snyder, California faced a budget

8   shortfall in 2004 that led to understaffing in the LWDA and insufficient resources to

9   enforce the Labor Code. To address these problems and ensure more vigorous

10  enforcement of the labor and employment laws, the California Legislature passed

11  PAGA. Ben Nicholson, *Businesses Beware: Chapter 906 Deputizes 17 Million*

12  *Private Attorneys General to Enforce the Labor Code*, 35 McGeorge L. Rev. 581,

13  584 (2004). PAGA allows an "aggrieved employee" to bring a lawsuit seeking civil

14  penalties arising out of violations of the California Labor Code that could otherwise

15  only be assessed and collected by California's Labor and Workforce Development

16  Agency. Cal. Lab. Code § 2699(a). The California Legislature intended to create "an

17  alternative private attorney general system for labor law enforcement." Citing

18  *Dunlap v. Superior Court,* 142 Cal. App. 4th 330, 337 (2006). In essence, PAGA

19  "deputizes" employees by allowing them to pursue the same civil monetary penalties

20  that, absent PAGA, would only be available to state law enforcement agents. Citing

21  *Franco v. Athens Disposal Co., Inc.,* 171 Cal. App. 4th 1277, 1300 (2009). The

22  *Cunningham* court said that by deputizing aggrieved employees, the California

23  Legislature intended to create incentives for non-governmental actors to enforce the

24  law in a growing labor market that could not be effectively controlled by public

25  agents. Citing *Dunlap,* 142 Cal. App. 4th at 337.

26         The *Cunningham* court reasoned that since a representative action under

27  PAGA allows an individual employee to seek monetary relief arising out of unlawful

28  conduct directed at a large group of employees, PAGA actions bear only a superficial

KNAPP,
PETERSEN
& CLARKE

-15-

2753148.1   08000/00942

1  resemblance to a class action. There are several factors distinguishing representative

2  PAGA actions and class actions. First, a unique feature of a representative action

3  under PAGA is that it is "fundamentally a law enforcement action designed to

4  protect the public and penalize the employer for past illegal conduct." *Cunningham*,

5  citing *Franco*, 171 Cal. App. 4th at 1300. The purpose is not to collect damages on

6  behalf of other employees or provide restitution to victims of Labor Code violations.

7  *Id.*  Consistent with this purpose, seventy-five (75%) percent of the civil penalties

8  recovered in a representative PAGA action are paid to the California Labor and

9  Workforce Development Agency. Cal. Lab. Code § 2699(i). The remaining twenty-

10  five (25%) percent of the penalties recovered are distributed to the aggrieved

11  employees who initiated the claim under PAGA, not to the employees on whose

12  behalf the claim was prosecuted.

13       The court in *Cunningham* reasoned that unlike a class action, a judgment or

14  dismissal with prejudice in a representative PAGA action is not binding on

15  non-party employees. *Arias*, 46 Cal. 4th at 975. This is because in a lawsuit brought

16  under PAGA, "the employee plaintiff represents the same legal right and interest as

17  state labor law enforcement agencies – namely, recovery of civil penalties that

18  otherwise would have been assessed and collected by the Labor Workforce

19  Development Agency." *Id.* This holding is consistent with the theory underlying

20  PAGA: the state – and not absent parties – is bound in PAGA litigation because a

21  private plaintiff bringing a PAGA suit is acting as a private attorney general on

22  behalf of the State of California, not as a representative of other employees.

23       For these reasons, the *Cunningham* court opined that "the best interpretation of

24  PAGA is that the penalties not distributed to the LWDA are distributed to the

25  individual employee who brought the action. The strongest consideration in favor of

26  this interpretation is that the statute contains no provisions for distributing any

27  portion of the recovery to non-party employees, even though PAGA contains

KNAPP,
PETERSEN
& CLARKE

28

-16-

2753148.1  08000/00942

1 | detailed procedures setting out how a representative action is litigated." Citing Lab.
2 | Code § 2699.3.

3 |     Moreover, the *Cunningham* court noted that the California Supreme Court has
4 | held that, under California law, non-party employees need not be given notice of
5 | representative actions under PAGA. Citing *Arias,* 46 Cal. 4th at 986-987. The lack of
6 | mandatory notice means that non-parties are never notified about any right to a
7 | portion of the recovery in a PAGA action, which implies that no such right exists.
8 | Furthermore, the *Cunningham* court noted that some courts have assumed that the
9 | twenty-five (25%) percent recovery goes to the individual plaintiff. Citing *Adoma v.*
10 | *Univ. of Phoenix, Inc.* 913 F. Supp. 2d 964 (E.D. Cal. 2012) 2012 WL 6651141, at
11 | *10 n.5; *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1195 (2008).

12 |     Finally, since the purpose of PAGA is to create incentives for private litigants
13 | to bring actions enforcing the Labor Code, not to provide restitution to aggrieved
14 | employees, rewarding prevailing litigants with a substantial recovery promotes
15 | PAGA's purpose.  Citing *Franco,* 171 Cal. App. 4th at 1300.

16 |     This reasoning is perfectly illustrated by the within case. Among 10,000
17 | employees, the non-LWDA penalty would amount to a payment of less than $10 per
18 | sales associate, the administration of which would cost as much as the settlement.
19 | Indeed, for many of the employees the amount would be much less. Among the
20 | factors that the court may consider in the instant case is that the employees in the
21 | employee class are younger workers who do not stay for many years at this job.
22 | Therefore, if there was any thought of dispersing the 25% penalty to all employees,
23 | as to any particular employee, the amount would be trivial.

24 |     As set forth above, the benefit to the employees is the change in practice.  The
25 | purpose of the 25% payment is to encourage PAGA plaintiffs to bring cases to
26 | achieve such results.

27 |     3.    <u>The Attorneys Fees</u>
28 | The payment of $360,000 in attorneys' fees and costs is reasonable. The

KNAPP,
PETERSEN
& CLARKE

-17-

1  attorneys' fees and costs received are less than those actually incurred, as set forth in

2  the Declaration of André E Jardini which is being filed concurrently with this

3  motion.  (Jardini Decl. ¶¶ 58, 65.)

4      Fees are separately recoverable in a PAGA action as provided in Labor Code §

5  2699(g)(1).  That action provides as follows:

6      "Any employee who prevails in an action shall be entitled to an award of

7  reasonable fees and costs."

8      Counsel for Echavez expended services with a value in excess of the fees

9  requested.  Fees were always separately apart from penalties.  The ultimate

10  settlement recommended by Judge Tevrizian at the mediation segregated between

11  fees and penalties.  (Jardini Decl. ¶¶ 64, 65.)

12  **D.    The Presence Of A Government Participant**

13      As set forth above, 75% of the penalty is paid to the LWDA, Labor Code

14  § 2699.3(b)(4) permits the LWDA to comment on the  penalties, This provides an

15  independent check on collusive settlements which are too low.

16  **E.    The Extent of Investigation and Discovery Completed**

17      Sufficient discovery had been concluded by the time of the mediation to

18  inform all counsel concerning the merits of the case.  (Jardini Decl. ¶ 19.)  (The

19  substantial discovery that was conducted is reflected in the chart attached as

20  Exhibit 3 to the Jardini Declaration.)

21      In addition, the Parties litigated a motion to dismiss, and, of course, the

22  summary judgment motions.  Also, a brief on appeal was filed for Echavez in the 9th

23  Circuit.

24      The Settlement was reached only after the case was thoroughly investigated by

25  counsel, and had reached the stage where "the Parties certainly have a clear view of

26  the strengths and weaknesses of their cases" sufficient to support the settlement.  *In*

27  *re Warner Commc'ns Sec. Litig.,* 618  F. Supp. 735, 745 (S.D.N.Y. 1985).

28  ///

KNAPP,
PETERSEN
& CLARKE

-18-

**F.    PAGA Counsel Are Experienced and Litigated Vigorously**

The court may also consider that negotiations between the Parties were conducted at arm's length, in an adversarial manner, despite a mutual desire to resolve the case.  (Jardini Decl. ¶ 28.)  The court may consider the opinion of all counsel that the settlement arrived at is fair, reasonable and in the best interests of the class members.

PAGA Counsel are experienced with class actions and representative actions, as set forth more fully in the Declarations of André E. Jardini and Robert L. Starr filed herewith. The three attorneys who principally worked on the case all have more than twenty years' experience for purposes of the adjusted Laffey Matrix calculation.

The three attorneys who principally worked on the case all have more than twenty years' experience for purposes of the adjusted Laffey Matrix calculation.

Further details regarding the experience and qualifications of PAGA Counsel are contained in PAGA Counsels' respective declarations in support of this Motion, filed concurrently herewith.

## VII.
## CONCLUSION

For the above reasons in fact and law, the Parties requests this court enter an order approving the settlement.

Dated:  February 17, 2017                KNAPP, PETERSEN & CLARKE


By: _____
André E. Jardini
Gwen Freeman
K.L. Myles
Attorneys for Plaintiff
AMBER ECHAVEZ, individually,
and on behalf of a class of similarly
situated individuals

KNAPP,
PETERSEN
& CLARKE

-19-

2753148.1  08000/00942

**PROOF OF SERVICE**
*Echavez v. Abercrombie & Fitch*
**Case No.:  CV11-09754 GAF (PJWx)**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action.  My business address is 550 North Brand Boulevard, Suite 1500, Glendale, California 91203-1922.  On February 17, 2017, I caused the foregoing document(s) described as MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION OF PLAINTIFF FOR APPROVAL OF SETTLEMENT  to be served on the interested parties in this action as follows:

      By placing a true copy thereof enclosed in a sealed envelope(s) addressed as stated below:

Attn:  PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA 94612

☒  **BY MAIL:** I sealed and placed such envelope for collection and mailing to be deposited in the mail on the same day in the ordinary course of business at Glendale, California.  The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2017, at Glendale, California.

_____      *Mindy Menahen*
    Mindy Menahen                (Signature)
   (Type or print name)

KNAPP,
PETERSEN
& CLARKE

2754438.1  08000/00942